OPINION
Defendant-appellant, Jerry Combs, appeals a judgment of the Clermont County Municipal Court in favor of plaintiff-appellee, Charles Leppert, in his suit for breach of contract and negligence in the installation of a concrete driveway at appellee's residence. We affirm.
In June or July 1993, appellee orally contracted with appellant for the construction of a concrete driveway and sidewalk. The negotiated price for the work was $3,000 cash. Within one year of the installation, however, the driveway began to crack and erode by flaking. Upon inspecting the driveway, appellant offered to "skimcoat" it with a concrete patching compound if appellee would purchase the materials, but would not agree to replace it. Appellee then brought this action for damages in the Clermont County Municipal Court, alleging breach of contract and negligent construction.
The case was heard by a magistrate, who recommended a judgment of $3,600 in favor of appellee. The trial court overruled appellant's objections and adopted the magistrate's recommendation. Appellant raises the following assignment of error on appeal:
 The Court erred in finding that Defendant-Appellant, Jerry Combs, negligently installed Plaintiff-Appellee's driveway and in entering judgment in favor of Plaintiff-Appellee in the amount of $3,600.
Appellant argues first that the magistrate's recommendation as adopted by the trial court was not supported by substantial evidence. Second, appellant argues that appellee offered "several equally plausible explanations" for the flaking, which resulted in a failure of proof so that the burden of proof improperly shifted to appellee to show that he did the work correctly.
In determining whether sufficient evidence was presented to prove a civil claim, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court. Season's Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80; C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280.
"Builders and contractors have a duty to perform work in a workmanlike manner." Dorrough v. DLH Acquisitions Co., Inc. (July 15, 1991), Warren App. No. CA90-08-057, unreported, citing Mitchem v. Johnson (1966), 7 Ohio St.2d 66. Further, where a breach of contract stemming from construction not accomplished in a workmanlike manner results in defective or unfinished construction, the plaintiff is entitled to recover damages. Lamonica v. Black (Oct. 3, 1984), Summit App. No. 11629, unreported, citing 3 Restatement of the Law 2d, Contracts (1979) 119, Section 348.
On the issue of causation in a negligence action, where more than one possible cause is advanced for the plaintiff's harm, the plaintiff is not required to effectively eliminate all other causes in order to make his case. Westinghouse Electric Corp. v. Dolly Madison Leasing Furniture Corp. (1975), 42 Ohio St.2d 122,127. This "would impose a burden of proof analogous to the burden in criminal cases of proof beyond a reasonable doubt." Id. Rather, the evidence must be such that a trier of fact "may reasonably determine that it is more likely than not that the defendant's negligence [was] the cause of the plaintiff's injury." Stone v. Davis (1981), 66 Ohio St.2d 74, 82.
Concrete contractor Melvin Miller offered expert testimony on behalf of appellee in this case. Miller testified that there were "two or three things" that could be causing the flaking on appellee's driveway. Miller stated that either excessive water could have been added to the concrete mix prior to its pouring, that the concrete could have been allowed to get too hard before the material was worked, or that potash used in the concrete could have caused the flaking.
When asked if road salt brought onto the driveway by vehicles driven on public roads could have caused the flaking, Miller responded, "Not in that period of time, no. It just wouldn't create that large of a problem in that short period of time." Miller testified that in his opinion, the condition of appellee's driveway was consistent with the concrete being too wet when poured and was the result of poor workmanship by appellant. Miller also stated that "you're better off taking it [the existing driveway] out and replacing it." Miller's estimate to replace appellee's driveway was $5,800.
Ronald Meadows, another concrete contractor, testified as an expert for appellant. Meadows also testified to several causes that in his opinion could account for the concrete flaking appellee was experiencing. Meadows stated that road salt or antifreeze could cause this type of damage. Another possible cause in Meadow's opinion could have been hot weather combined with a failure by appellee to keep the concrete watered down during the curing process.
When asked if he had an opinion as to what caused the damage to appellee's driveway, Meadows testified that his conclusion was that the flaking was caused by damage from road salt. Meadows compared the damage to appellee's driveway with a concrete driveway installed at Meadows' sister's home the previous year. Meadows stated that close to the garage, where his sister's family had kept three or four cars parked outside on the driveway during the winter, the concrete was flaking due to road salt brought in by the vehicles.
On cross-examination, however, Meadows agreed that the "vast majority" of appellee's driveway was flaking, as opposed to the one area where vehicles were parked on his sister's driveway. Meadows also agreed that if a concrete mix is too wet when a driveway is poured, it could cause problems similar to appellee's.
Meadows stated that a two-inch concrete cap could be poured over the existing driveway for approximately $2,200. Meadows' estimate to replace the driveway was $3,600 before the contractor's profit. This estimate included $1,600 to tear out the existing driveway, $1,200 for new concrete, and $800 for the finish work.
Appellant alleged in his testimony that when he came out to inspect the damage to appellee's driveway and was telling appellee about how road salt could damage concrete, "Charley [appellee] admitted to me, he said, "Well I put salt on the driveway myself." Appellee denied the statement and testified that he did not place salt or any other foreign substance on his driveway.
Appellant also testified that although he specifically requested that appellee pay him $3,000 in cash for the job and that he was present and supervised the work during the five days it took to complete, he turned all the money over to another individual who worked on the driveway and did not keep any for himself. On cross-examination, appellant admitted that he is receiving disability benefits from workers compensation and that any income he earns while on disability would have to be reported to that agency.
The trial court, in adopting the magistrate's decision, found from the evidence that it was more likely than not that the damage to appellant's driveway was caused by excessive water in the concrete mix and that the driveway installation was not performed in a workmanlike manner. Having reviewed the record in this case, we find that competent, credible evidence supports the trial court's judgment. See Season's Coal, 10 Ohio St.3d at 80; C.E. Morris Co., 54 Ohio St.2d at 280. Appellant's first and second arguments are therefore not well-taken.
Appellant also argues that the amount of damages, as recommended by the magistrate and adopted by the trial court, was improperly calculated. "The failure to perform in a workmanlike manner renders the contractor liable for damages measured by the cost to repair deficient work." Dorrough, Warren App. No. CA90-08-057, unreported (citation omitted). The property owner is entitled to proper performance of the contract. Barton v. Ellis (1986), 34 Ohio App.3d 251, 253.
Meadows, appellant's expert, testified that a two-inch cap could be applied to appellee's driveway and would provide a new finish "for a winter or two." Miller, appellee's expert, was of the opinion that "you'd be better off taking it out and replacing it." The magistrate's decision, as adopted by the trial court, concluded that Miller's estimate of $5,800 was too vague to be relied upon as a measure of damages. The magistrate used Meadows' $3,600 estimate, which Meadows was able to break down for prep work, materials and finishing, and which did not include a contractor's profit.
We conclude that the record contains evidence to support both the trial court's decision to award the replacement cost of the driveway as the measure of damages and to accept the estimate of appellant's expert in calculation of the amount. See Barton,34 Ohio App.3d at 253-254. Appellant's third argument is therefore also without merit.
Having considered each of appellant's arguments, we overrule appellant's assignment of error in its entirety and affirm the judgment of the trial court.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.