[Cite as *Westfield Ins. Group v. Pure Renovations, L.L.C.*, 2019-Ohio-4773.]
IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Westfield Insurance Group, A/S/O Jane E. Pfeifer | : | |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 18AP-854 |
| v. | | (C.P.C. No. 17CV-5212) |
| | : | |
| Pure Renovations, LLC, | | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on November 21, 2019

**On brief:** *de Luca Levine, LLC*, *Matthew Connolly*, and *Kenneth T. Levine*, for appellant. **Argued:** *Kenneth T. Levine.*

**On brief:** *Gallagher Sharp LLP*, *Steven D. Strang*, and *Quinn M. Schmiege*, for appellee. **Argued:** *Steven D. Strang.*

APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Plaintiff-appellant, Westfield Insurance Group A/S/O Jane E. Pfeifer, appeals the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Pure Renovations, LLC. Because there are disputed material issues of fact and because appellee has not demonstrated that it is entitled to judgment as a matter of law, we reverse.

**FACTS AND PROCEDURAL HISTORY**

{¶ 2} Appellant's insured, Jane F. Pfeifer, owned a home located at 274 Beckley Lane in Dublin, Ohio. Pfeifer entered into a contract with appellee to renovate the kitchen

and to do other miscellaneous work at her home. None of the work directly involved the attached garage. Appellee began the renovation work in late October or early November 2016.

{¶ 3} During most of the project, the crew disposed of construction debris in a dumpster placed in the driveway. However, at some point in time, the dumpster was removed and construction debris was piled in the garage. The debris pile contained strips of plywood, trim, carpentry trash, and other construction material. The debris pile was between one and one-half and three feet high and covered a considerable portion of the right side of the garage.

{¶ 4} On December 2, 2016, Pfeifer left her home at 12:30 p.m. to travel to Virginia to visit her daughter. Her dog walker, Susan Montgomery, arrived at the home about 4:30 p.m. to take Pfeifer's dog out. Appellee's construction workers were present at that time and the vehicle garage door was open. Montgomery returned the dog to the home about 4:45 p.m. and then left.

{¶ 5} Jason Parker, the project foreman, was the last person on the construction crew to leave the project at about 5:00 p.m. He made sure that the vehicle garage door was closed and the exterior doors were locked when he left.

{¶ 6} Montgomery returned to the home at approximately 7:30 p.m. to walk the dog again. Upon entering the house, she noticed a "musty, sawdusty sort of smell." She took the dog for a 15 minute walk, came back to the house, and again smelled a musty, sawdusty sort of smell. She described the smell as a "sanding of wood or a cutting of wood" smell, but she also smelled a chemical-pungent smell around the front door, but the woody smell was more prevalent. (Montgomery Dep. at 36.) It did not smell like smoke. Although Montgomery walked through a portion of the house to try to determine the source of the smell, she was unable to locate the source. She did not go into the garage. Montgomery called Pfeifer to report the smell. Pfeifer told her she had previously noticed such a smell from the construction work and not to worry. Montgomery then left.

{¶ 7} Shortly before 9:00 p.m., Pfeifer's next door neighbor noticed that Pfeifer's garage was on fire and called 911. By the time the fire department arrived, the fire had essentially destroyed the garage. There also was some collateral damage to other portions of the house attributable to the heat and/or the subsequent firefighting activity. It is undisputed that the fire originated in the southeast corner of the garage near the vehicle

garage door. The pile of construction debris was located at or near the origin of the fire. There were remnants of a plastic trash can owned by Pfeifer at or near the origin of the fire.

{¶ 8} Prior to the fire, appellee's construction crew stained some interior stairs. There is conflicting evidence regarding when, where, and how the crew disposed of the rags used to stain the stairs. In addition, a number of appellee's construction crew smoked cigarettes and there is conflicting evidence regarding where the smoking occurred and how the crew disposed of their cigarette butts.

{¶ 9} Although the origin of the fire is undisputed, the ignition source could not be specifically determined. Electricity, gas, and liquid accelerants were ruled out as potential ignition sources. However, appellant's expert witness, David Russell, opined that there were "two possible ignition sources for this fire: spontaneous combustion of staining rags by Pure Renovation employees or discarded smoking material by Pure workers." (Def.'s Ex. K., Russell's Mar. 20, 2018 Investigative Report at 2.) Russell based his opinion on evidence that staining rags may have been thrown away in a plastic trash can located in the garage as well as evidence that on the day of the fire some of appellee's construction crew smoked cigarettes near the origin of the fire and may have disposed of cigarette butts in the debris pile. However, Russell could not state within a reasonable degree of scientific certainty whether the ignition source was spontaneous combustion of discarded staining rags or a smoldering cigarette butt discarded near the pile of construction debris.

{¶ 10} Appellant (as a subrogee of Pfeifer's rights) sued appellee for negligence, breach of contract, and breach of warranties.[1] Following significant discovery, appellee moved for summary judgment on the ground that because the cause of the fire was undetermined, appellant could not prove that appellee's conduct was the proximate cause of the fire. Appellant opposed the motion arguing that there were disputed issues of material fact and that Russell's expert opinion created an issue of fact on the question of proximate causation. The trial court granted appellee summary judgment and appellant appeals assigning the following error:

> Appellant respectfully contends that the Franklin County Court of Common Pleas erred when it granted Defendant, Pure Renovations, LLC's Motion for Summary Judgment, dismissing all of Appellant's claims on October 9, 2018. The

---

[1] Appellant also brought claims against Drywall Medics, LLC. Appellant subsequently dismissed those claims with prejudice.

Trial Court's Order did not state a reason for granting Defendant's Motion, which raised only one issue: whether or not Appellant could satisfy its burden of proof on the element of proximate causation.

## LEGAL ANALYSIS

{¶ 11} In its sole assignment of error, appellant argues that the trial court erred in granting appellee summary judgment. We agree.

{¶ 12} Appellate review of summary judgment motions is de novo. *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). " 'When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.' " *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, ¶ 11 (10th Dist.), quoting *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). Civ.R. 56(C) provides that a trial court must grant summary judgment when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6. The party against whom the motion for summary judgment is made is entitled to have the evidence construed most strongly in that party's favor. Civ.R. 56(C).

{¶ 13} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or otherwise allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id.* If the moving party meets this initial burden, then the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

{¶ 14} In order to prove an actionable claim for negligence, a plaintiff must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach. *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142 (1989). " 'The rule of proximate cause "requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act." ' " *Eastman v. Stanley Works*, 180 Ohio App.3d 844, 2009-Ohio-634, ¶ 40 (10th Dist.), quoting *Jeffers* at 143, quoting *Ross v. Nutt*, 177 Ohio St. 113, 114 (1964). *See Quaye v. N. Mkt. Dev. Auth.*, 10th Dist. No. 15AP-1102, 2017-Ohio-7412, ¶ 23, citing *Whiting v. Ohio Dept. of Mental Health*, 141 Ohio App.3d 198, 202 (10th Dist.2001). "[A] defendant's conduct is a cause of the event (or harm) if the event (or harm) would not have occurred *but for* that conduct; conversely, the defendant's conduct is not the cause of the event (or harm) if the event (or harm) would have occurred regardless of the conduct." (Emphasis sic.) *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84-85 (1996), citing Prosser & Keeton, Law of Torts, at 266 (5 Ed.1984). Ordinarily, proximate cause is a question of fact for the jury. *Eastman* at ¶ 42, citing *Strother v. Hutchinson*, 67 Ohio St.3d 282, 288 (1981).

{¶ 15} Here, appellee argues that it is entitled to summary judgment because there is no evidence that any conduct of appellee's construction crew was the proximate cause of the fire. Because the cause of the fire is undetermined, appellee argues that appellant is unable to establish proximate causation. In support of that argument, appellee points to Russell's report and deposition testimony (appellant's expert) where he admits that he cannot say within a reasonable degree of scientific certainty whether the ignition source for the fire was the spontaneous combustion of discarded staining rags or a cigarette butt discarded at the origin of the fire.

{¶ 16} In response, appellant identifies a number of disputed issues of material fact concerning when, where, and how appellee's construction crew disposed of rags used to stain the stairs, where members of appellee's crew smoked cigarettes, and where they disposed of their cigarette butts. Specifically, appellant points to evidence that appellee's crew threw away rags used to stain the stairs in a plastic trash can located at or near the origin of the fire and that on the day of the fire some members of appellee's crew smoked cigarettes near the origin of the fire. In addition, appellant argues that Russell's opinion

that the ignition source of the fire was either spontaneous combustion of the staining rags or a discarded cigarette butt near the construction debris pile creates a material issue of fact on the question of proximate causation. Appellant points to evidence that electricity, gas, and liquid accelerants were ruled out as ignition sources and there was no other evidence of an ignition source other than spontaneous combustion of staining rags or a discarded cigarette butt. Lastly, appellant contends that the presence of construction debris in the garage near the origin of the fire was in and of itself a breach of duty and a concurrent proximate cause of the fire damage because it provided the fuel necessary for the fire after the ignition event. Given the disputed issues of fact regarding (1) when and how appellee's crew disposed of the staining rags, (2) where they smoked cigarettes, (3) how cigarette butts were discarded, (4) how the presence of construction debris impacted the resulting fire damage, and (5) Russell's opinion regarding the likely cause of the fire, appellant contends the trial court erred in granting summary judgment for appellee. We agree.

{¶ 17} Evidence submitted in support of and in opposition to the motion for summary judgment reflects that there are disputed issues of material fact regarding when and how appellee's crew disposed of the staining rags. Appellee points to evidence that the rags were put in the driveway dumpster and that the dumpster was removed prior to the fire. (Parker Dep. at 20-23 and 39-40.) Appellee also cites to evidence that its crew did not smoke in the garage and only disposed of cigarette butts in their vehicles. *Id.* at 19-20. Appellant counters with evidence that the rags used to stain the stairs may have been thrown away in a plastic trash can located in the garage. Russell's report indicates that appellee's owner, John Fout, told Russell that:

> [T]hey stained the stair treads leading from the first floor to the second floor two days before the fire. The stain rags were either discarded in their work truck or in the trash can in the garage.

(Russell Report at 6.) Appellant also cites to evidence that the dumpster was removed several weeks before the fire and long before the stairs were stained. (Montgomery Dep. at 44; Pfeifer Dep. at 42.) Therefore, appellant contends the rags could not have been taken away in the dumpster. Investigation after the fire revealed the remains of a melted plastic trash can at or very near the location where the fire originated. (Russell's Report at 9-10.)

{¶ 18} Appellant further points to evidence that during the course of the renovation, appellee's construction crew smoked cigarettes in and outside the garage prior to the fire

and the homeowner found discarded cigarette butts up and down the driveway. (Pfeifer Dep. at 49.) In addition, a neighbor testified that he saw members of appellee's construction crew smoking cigarettes near the vehicle garage door on the day of the fire. (Gillenbeck Dep. at 15, 32.) It is undisputed that the origin of the fire was the southeast corner of the garage, close to the vehicle garage door and that construction debris was piled at or near that area.

{¶ 19} Based upon evidence of discarded staining rags in a plastic trash can located at or near the origin of the fire and smoking activity at or near the origin of the fire on the day of the fire, and the absence of evidence of other ignition sources, Russell concluded that either spontaneous combustion of the staining rags or a discarded cigarette butt was the likely ignition source for the fire. Because he could not definitively identify which of these two causes was the proximate cause of the fire, Russell concluded that the cause was undetermined. However, his inability to determine, within a reasonable degree of scientific certainty, which of these two causes was the ignition source of the fire does not preclude appellant from establishing proximate cause because both scenarios implicate solely appellee's potential negligent conduct. We note that the evidence rules out electricity, gas, and liquid accelerants as possible causes and, although other causes were theoretically possible (i.e. arson), there was no evidence suggesting another cause. Viewing Russell's report and deposition testimony in a light most favorable to appellant as the nonmoving party, we conclude that there are disputed issues of fact on the question of proximate causation that preclude summary judgment.

{¶ 20} This conclusion is supported by *Westinghouse Elec. Corp. v. Dolly Madison Leasing & Furniture Corp.*, 42 Ohio St.2d 122 (1975), which also involved a negligence claim for fire damage. The plaintiff's claim was based on the theory that one of the defendant's employees caused the fire by carelessly discarding a cigarette butt near combustible materials located in a closed but unlocked closet. The closet was the point of origin of the fire. Although the closet door was closed, there was a gap of several inches between the bottom of the closet door and the floor. Finding that the issue of proximate cause for the fire was a question for the jury, the court stated:

> There was testimony to the effect that [defendant's employee] was in the vicinity of the closet which was the point of origin of the fire; that he was smoking; that he would probably have had to dispose of a cigarette butt while near the closet; that there

were flammable materials in the closet and paper which could be set on fire by a dropped cigarette; and that the interval of time before the discovery of the fire was compatible with a fire caused by a dropped cigarette. The testimony on these facts was disputed, and the jury could have chosen to disbelieve any or all of them, but the theory was nonetheless one upon which reasonable minds could differ, and therefore raised a question for the jury.

Defendants suggested that other causes of the fire were possible, such as spontaneous combustion, arson, or sparks from a locomotive. However, all these possible causes were questions of fact for the jury and none acted to prevent the drawing of an inference of defendant's liability, as they would, for example, if they established that some other cause was the only one possible. None of defendant's theories of the cause of the fire amounted to more than the suggestion that other causes were possible, and none amounted to proof that the evidence presented by plaintiffs did not permit an inference that careless smoking by defendant's employee caused the fire. Suggestion of other causes is limited only by the limits of human imagination, and are not a basis for taking a case from the jury.

*Id.* at 128-29.

{¶ 21} In *Westinghouse*, the court rejected the defendant's argument that careless smoking was only one of several equally probable causes and that the plaintiff's failure to eliminate other potential causes required judgment in defendant's favor. The court found that the evidence presented, some of which was disputed, justified sending the issue of proximate cause to the jury. The court expressly rejected the notion that a plaintiff must eliminate all potential causes for the fire other than the negligence of the defendant in order for the issue of proximate cause to go to the jury, as long as there is some evidence that the defendant's negligence caused the fire. *Id.*

{¶ 22} As previously noted, in the case at bar there is evidence that appellee's crew may have thrown away staining rags in a plastic trash can located at or near the origin of the fire several days before the fire that could have ignited by spontaneous combustion and that some members of appellee's crew smoked cigarettes near the point of origin of the fire—an area that also contained a pile of combustible construction debris. Both the disposal of staining rags and careless smoking are potential ignition sources that could implicate appellee's negligent conduct. Furthermore, the disputed nature of some of this evidence

underscores the reason why the question of proximate cause presents a question for the jury.

{¶ 23} Lastly, there was a pile of construction debris in the garage at or near the origin of the fire. It is undisputed that the pile of construction debris was a fuel source that fed the fire after ignition. There is also an issue of fact regarding whether the pile of construction debris constituted a breach of duty and whether it was a concurrent proximate cause of the resulting fire damage. ("The debris pile would have aided the spread of the fire and provided a substantial fuel load for fire spread." Russell's Report at 8.) *See Brondes Ford, Inc. v. Habitec Sec.*, 6th Dist. No. L-12-1358, 2015-Ohio-2441, ¶ 138 (sufficient evidence of proximate cause in suit against fire alarm installer for delay in fire detection that caused more extensive damage than would have otherwise occurred if the fire detection system had been properly installed, even though the cause of the fire was undetermined); *Am. States Ins. Co. v. Caputo*, 126 Ohio App.3d 401, 407-08 (8th Dist.1998) (sufficient evidence of proximate cause in suit against builder warranted an instruction on concurrent causation when evidence suggested failure to install fire stop allowed fire to spread and cause increased damages, even though that party did not cause the fire).

{¶ 24} Because there are disputed issues of material fact that preclude summary judgment, we sustain the sole assignment of error, reverse the judgment of the Franklin County Court of Common Pleas, and remand the case for further proceedings consistent with this decision.

*Judgment reversed; case remanded.*

SADLER and BEATTY BLUNT, JJ., concur.

_____